IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAURICE WEBB,                      )
                                   )
              Petitioner,          )
                                   )
       v.                          )   No. 13 C 3369
                                   )
NEDRA CHANDLER, Warden,            )
Dixon Correctional Center,         )
                                   )
              Respondent.          )

**MEMORANDUM ORDER AND OPINION**

MARVIN E. ASPEN, District Court Judge:

Petitioner Maurice Webb, an inmate at Dixon Correctional Center, where Respondent Nedra Chandler is Warden, now petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND AND PROCEDURAL HISTORY**

Webb asserts four claims for relief: (1) there was insufficient evidence to find that Webb knowingly possessed a controlled substance; (2) the trial court abused its discretion in stating that had Webb not lied to the police about the presence of marijuana, it would have found Webb not guilty; (3) the trial court erroneously denied Webb's motion to quash arrest and suppress evidence; and (4) the trial court erroneously denied Webb's motion for a directed verdict. Respondent now moves to dismiss Webb's petition stating that Claim One is meritless, Claims Two and Four are procedurally defaulted and meritless, and Claim Three is non-cognizable. For the reasons set forth below, we deny Webb's petition in its entirety. We also decline to issue a Certificate of Appealability ("COA").

Webb does not present clear and convincing evidence challenging the facts in the last state court decision addressing the merits of his arguments.[1] We thus presume those facts are correct for the purpose

---

[1] Webb argues that the Illinois Appellate Court failed to make a clear distinction that of the 5.6 grams of substance recovered from Webb's pocket, only 0.1 grams consisted of marijuana. (Pet. at 25.) We find this challenge both without merit and irrelevant. The appellate court stated: "Chemist Kenneth Raiser tested the substance removed from defendant's pocket and determined [that] the substance weighed 5.6 grams and that it contained some amount of cannabis. Defendant denied knowing that the cigar had any

of habeas review, *see* 28 U.S.C. § 2254(e)(1), *Bolton v. Akpore*, 730 F.3d 685, 687 (7th Cir. 2013), and adopt the Illinois Appellate Court's statement of facts in *People v. Webb*, No. 3-08-0880, slip op. at 2–4 (3rd Dist. Feb. 17, 2010). We summarize them below.

## A. Arrest, Trial, and Conviction

On March 6, 2008, Webb was driving an automobile on Illinois Interstate 80 with a passenger, Pasilon Thornton. Thornton was staying at a mutual friend's residence, and Webb had agreed to give Thornton a ride. Prior to leaving and when no one was present, Thornton placed his bag in the trunk of the car.

Webb was pulled over by Illinois State Trooper Skinner, who noticed that the car had an illegal license plate cover. Officer Skinner smelled marijuana as he approached the car. Webb told Skinner that he had no knowledge of marijuana being present in the car. Skinner ran Webb's information and learned that Webb had a suspended license. Skinner placed Webb in his squad car and told him that he was under arrest for driving on a suspended license and that he was going to search the vehicle based on his detection of the burnt marijuana smell. Skinner found a bag containing approximately 127 grams of crack cocaine in the tire well of the car and a minuscule amount of marijuana residue on the front passenger floorboard. Skinner also recovered $3,080 in cash and a cigar package from Webb's pocket that also contained a minuscule amount of marijuana residue. Chemist Kenneth Raiser tested the substance recovered from Webb's pocket and testified at trial that the substance weighed 5.6 grams and contained some amount of marijuana. Raiser could not specify how much of the 5.6 grams was marijuana, however.

A check on the vehicle revealed that the title belonged to Byron Parker. At trial, Parker testified that he had sold the car to Webb a few months before this incident yet he could not remember the specific time or provide any documentation of the sale.

---

cannabis in it." (Resp. Ex. A, *People v. Webb*, No. 3-08-0880, at 3 (Ill. App. Ct 2010).) Raiser testified at trial that he examined the 5.6 grams of substance and could give an expert opinion that the substance contained some level of cannabis, but could not be precise as to how much of the 5.6 grams was cannabis. (Resp. Ex. L, Report of Proceedings, *People v. Webb*, No. 08 CF 162 (Cir. Ct. LaSalle Cty) (two volumes), Vol. 1, R. at 231–32.)

Prior to trial, Webb filed a motion to quash the arrest and suppress evidence, claiming that his Fourth Amendment rights had been violated by the warrantless search of the vehicle he was driving. The Illinois Circuit Court denied Webb's motion, ruling that the search of the vehicle was justified pursuant to probable cause based on Skinner's detection of the marijuana odor and pursuant to a police inventory search.

In August 2008, after a bench trial, Webb was found guilty of possession with the intent to distribute and sentenced to thirteen years detention in the Illinois Department of Corrections.

**B. Direct Appeal**

Webb appealed his conviction and sentence to the Illinois Appellate Court, Third District. (Resp. Ex. B, Pet. Direct Appeal Opening Br., *People v. Webb*, No. 3-08-0880.) Webb raised the same four claims that he raises before us now. (*Id.* at 6.) The appellate court affirmed the trial court's ruling in its entirety. (Resp. Ex. A, *People v. Webb*, No. 3-08-0880, at 15 (Ill. App. Ct. 2010).) Webb did not file a Petition for Leave to File an Appeal ("PLA") with the Illinois Supreme Court.[2]

**C. Post-Conviction Relief**

On August 12, 2010, Webb filed a *pro se* post-conviction petition. (Resp. Ex. E, Pro Se Postconviction Petition, *People v. Webb*, No. 08 CF 162 (Cir. Ct. LaSalle Cnty.).) Webb raised the following three claims: (1) ineffective assistance of counsel; (2) illegal search and seizure; and (3) the State's failure to prove him guilty beyond a reasonable doubt. (*Id.*) On January 27, 2011, the Circuit Court of LaSalle County dismissed Webb's petition. (Resp. Ex. L, Report of Proceedings, *People v. Webb*, No. 08 CF 162 (Cir. Ct. LaSalle Cnty.) (two volumes), Vol. 2, R. at 24.) On March 26, 2012,

---

[2] There was an apparent miscommunication between Webb, his trial attorney Patrick Fagan, and the Illinois Supreme Court. Fagan told Webb that he filed a PLA on Webb's direct appeal and sent Webb a copy, but the Illinois Supreme Court never received the copy. (Resp. Ex. G, Pet. Resp. to Mot. to Withdraw as Counsel, *People v. Webb*, No. 3-11-0075, at 1–2.) Webb does not argue here that this miscommunication should serve to overcome any procedural default and we do not consider the issue. Furthermore, the PLA that Webb and Fagan intended to file brings only two claims, which mirror Claim One and Claim Three of the immediate petition, neither of which we rule are procedurally defaulted. *See,* (*Id.*, Attach. 1) ("Petitioner Defendant is essentially challenging two things: 1) The sufficiency of the evidence relied upon by the Circuit Court and the Third District in finding Petitioner guilty and affirming that conviction, and 2) The denial of Petitioner's Motion to Quash Arrest and Suppress Evidence.")

Webb appealed the dismissal of his post-conviction petition raising the same three issues. (Resp. Ex. G, Pet. Resp. to Mot. to Withdraw as Counsel, *People v. Webb*, No. 3-11-0075.) On June 26, 2012, the Illinois Appellate Court dismissed Webb's post-conviction appeal. (Resp. Ex. H, Post-Conviction Appeal Order, *People v. Webb*, No. 3-11-0075 (Ill. App. Ct. 2012).) On November 1, 2012, Webb filed a PLA on his post-conviction relief. (Resp. Ex. I, Post-Conviction PLA, *People v. Webb*, No. 115192.) Webb raised essentially the same three claims.[3] (*Id.* at 2.) On January 30, 2013, the Supreme Court of Illinois denied Webb's PLA for his post-conviction relief. (Resp. Ex. J, Order Denying Post-Conviction PLA, *People v. Webb*, No. 115192 (Ill. 2013).)

## DISCUSSION

### A. Procedural Default—Claim Two and Claim Four

Respondent argues that Webb has defaulted on Claims Two and Four for failing to raise each claim through one complete round of state court review. (Ans. at 14, 16.) Webb did not file a PLA on his direct appeal, but did file a PLA on his post-conviction claims. Webb contends that he raised Claims Two and Four through one complete round of post-conviction proceedings. (Reply at 5–8.) We find that Webb procedurally defaulted on both Claims Two and Four.[4]

#### 1. Standard of Review

Before we may consider a petition for writ of habeas corpus on its merits, the petitioner must give the state courts one full opportunity to resolve any constitutional issues by proceeding through the state's established appellate review process. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); *Malone v. Walls,* 538 F.3d 744, 753 (7th Cir. 2008). To avoid procedural default by giving the state courts one full opportunity to resolve any constitutional issues, the petitioner must: (1) exhaust all available state court remedies; and (2) fairly present any federal claims in state court. 28 U.S.C.

---
[3] Webb summarizes his claims in his PLA on his post-conviction proceeding as follows: "Leave of appeal should be granted because Webb's Constitutional Rights were violated, during an illegal search and seizure (4th Amend.), his rights to Due Process (14th Amend. & right to effective assistance of counsel (6th Amend.)." (Resp. Ex. I, at 2.)
[4] Even absent procedural default, we would deny the petition as to Claims Two and Four because we find they are meritless.

4

§ 2254(b)(1); *Picard v. Connor,* 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971). A petitioner fairly presents his claim by asserting both the operative facts and the controlling legal principles through one full round of the state's established appellate process, either on direct appeal or in post-conviction proceedings. *Boerckel,* 526 U.S. at 845, 119 S. Ct. at 1732–33; *Malone,* 538 F.3d at 753; *Lewis v. Sternes,* 390 F.3d 1019, 1025 (7th Cir. 2004). One full round includes levels in which review is discretionary rather than mandatory. *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004); *Lewis,* 390 F.3d at 1025. Thus, for federal habeas relief from a conviction in Illinois state court, the petitioner must assert each claim for which he seeks relief to both the Illinois Appellate Court and the Illinois Supreme Court. *Boerckel,* 526 U.S. at 845, 119 S. Ct. at 1732; *Smith v. McKee,* 598 F.3d 374, 383 (7th Cir. 2010).

We hold *pro se* pleadings to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S. Ct. 594, 596 (1972); *Byers v. Basinger*, 610 F.3d 980, 986 (7th Cir. 2010). A habeas petitioner still must give each level of state court review an opportunity to consider the claim. *Boerckel,* 526 U.S. at 845, 119 S. Ct. at 1732; *Malone,* 538 F.3d at 753. If the petitioner fails to comply with the abovementioned requirements, he has procedurally defaulted. *See Boerckel,* 526 U.S. at 853–54, 119 S. Ct. at 1737.

**2. Claim Two Analysis**

Webb argues in Claim Two that the trial court abused its discretion in stating that, had Webb not lied to the police about the presence of marijuana, it would have found petitioner not guilty.[5] (Pet. at 4.) Respondent argues that Webb failed to raise this claim in any of his post-conviction pleadings. (Ans. at 14.) Webb contends that he raised an "expanded argument of Claim Two in his Post Conviction Petition." (Reply at 5.) Even construing Webb's post-conviction pleadings liberally, we find that he has not properly preserved Claim Two.

---

[5] Webb summarizes Claim Two as follows: "Whether Circuit Court Judge Cynthia Racuglia abused her discretion in stating that the only reason for her guilty finding was her belief that Defendant "lied" about possessing an uncharged quantity of cannabis." (Pet. at 4.)

5

Webb discussed the trial court's statements in his post-conviction proceedings in relation to an ineffective assistance of counsel claim.[6] (Resp. Ex. E, at 5–6.) Therefore, the Illinois courts reviewing Webb's post-conviction petitions considered whether Webb's attorney's actions as reflected in the trial court's statement constituted ineffective assistance of counsel. (*Id.*) They did not consider whether the judge's statement itself was an abuse of discretion, as he argues here. (*Id.*) Variations within the same legal claim may not preclude exhaustion, but using a different legal theory will. *See, e.g., Bonds v. United States*, 441 F. App'x 386, 389 (7th Cir. 2011) (holding that *pro se* appellant was barred from raising an ineffective assistance of counsel claim in the circuit court based on different facts than the appellant used as the basis of his ineffective assistance of counsel claim in the district court); *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001) (citing *Demarest v. Price,* 130 F.3d 922, 932, 939 (10th Cir. 1997)) ("[A] petitioner's reformulation of his claim should not place the claim in a significantly different legal posture by making the claim stronger or more substantial."); *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980) (citing *Macon v. Lash*, 458 F.2d 942, 948 (7th Cir.1972)) ("[M]ere variations in the same claim rather than a different legal theory will not preclude exhaustion[.]"). Webb is now raising an abuse of discretion claim when previously these facts were framed as an ineffective assistance of counsel claim. Webb is therefore raising a different legal claim and not merely a variation of the same claim. *Wilks,* 627 F.2d at 38. While Webb raised Claim Two, as articulated here, in his direct appeal, he failed to file a PLA on his direct appeal. Accordingly, the Illinois Supreme Court never had the opportunity to consider Claim Two in either the direct appeal or in the post-conviction proceedings. Claim Two is therefore procedurally defaulted.

---

[6] Webb makes the following argument in his post-conviction petition:

> On July 10, 2008 Judge Cynthia Racuglia made the following statement before entering judgment, (and I quote), 'what bothers me in this case and what is proof that the defendant is lying about everything, if he just would have admitted that he had cannabis, he would have won the case. I would have had reasonable doubt.' … Had defense counsel had People's Exhibit 4 properly presented to the Court, the trial judge would not have had this opinion of Petitioner's credibility. Thus, changing the outcome of this case.

(Resp. Ex. E, at 5–6).

6

Furthermore, even if Claim Two were not defaulted, we would deny the petition as to Claim Two. The Illinois Appellate Court reviewed the trial court's statements and ruled that "taken as a whole, [the trial court's statements] clearly establish that defendant's testimony was found to be unbelievable[.]" (Resp. Ex. A, at 10.) We agree with the Illinois Appellate Court that the trial court's statements were indicative of its perception of Webb's credibility and not an abuse of discretion.[7] Only the trier of fact should determine the credibility of the witnesses in front of it, and "absent extraordinary circumstances," that determination should not be disturbed. *United States v. Van Wyhe*, 965 F.2d 528, 531 (7th Cir. 1992) (quoting *United States v. Dunigan,* 884 F.2d 1010, 1013 (7th Cir. 1989)); *see also Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 851 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no

---

[7] Webb takes issue with the following excerpt from the trial court: "if [Webb] would have admitted that he had cannabis he would have won the case." (Reply at 4.) But that statement placed in its full context indicates that the trial court was explaining its basis for finding Webb not believable, rather than convicting Webb based on a tangential issue, as Webb argues. The statement in context is as follows:

> This defendant is presumed innocent. And, frankly, his story is presumed to be reasonable and rational and it's up to the State to prove otherwise. The defendant did not have to testify, but he did. But it's still the State's burden to prove that what the defendant testified to was not the truth. And in this particular case, I find the State has proven beyond a reasonable doubt that the defendant is a liar. And here is what bothers me. And that his state [sic] in fact the circumstantial evidence proves knowledge and that the defendant is not telling the truth. And as a result of that, since the State has proven he is not telling the truth about his state or his version of the events, that I find him guilty beyond a reasonable doubt. And I am going to get down, since this is a bench trial, I am going to tell you what really bothers me. I really believe that there could have been doubt in my mind except for one thing. I agree that Mr. Parker may have, he's an elderly gentleman. And while I found him believable, just with his testimony, I would have had some doubt. No matter what I believe, because in many cases when I find the defendant not guilty, I may believe they are guilty beyond a reasonable doubt. What bothers me in this case and what is proof that the defendant is lying about everything, if he just would have admitted that he had cannabis, he would have won the case. I would have had reasonable doubt. There is absolutely no question that cannabis smells, is a strong odor. He had the cannabis on him. It was tested. And there is absolutely no question in this Court's mind that if the defendant had admitted to the officer after viewing the video and the opportunity he had to admit he was smoking cannabis, I would have had some doubt as to the knowledge of the defendant as to the cocaine, the drugs, based on the evidence the State had. But the State has proven the defendant to be a liar and has convinced me based on the circumstantial evidence that everything the defendant has said concerning his version of the events is unreasonable, makes no sense, and I am convinced beyond a reasonable doubt that the defendant is guilty and I so enter judgment.

(Ex. L, R. 251–53.)

7

license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.") Because Webb opted for a bench trial, the trial court served as the trier of fact. (Resp. Ex. L, Vol. 1, R. at 62.) (Webb waives right to a jury trial); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1068 (7th Cir. 2013) ("In a bench trial or hearing without a jury, the district court judge acts as both gatekeeper and factfinder."); *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228, 920 N.E.2d 233, 242 (Ill. 2009) ("[I]n a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence.") We find no extraordinary circumstances that would warrant setting aside the credibility determinations of the trial court.

### 3. Claim Four Analysis

Webb argues in Claim Four that the trial court erroneously denied his motion for a directed verdict.[8] (Pet. at 6.) Respondent counters that Webb failed to raise Claim Four in the direct appeal PLA but makes no mention of whether Webb raised it in his post-conviction PLA. (Ans. at 16.) Webb contends that, similar to Claim Two, he raised an "expanded argument" of Claim Four in his post-conviction petition, yet he does not argue that he raised Claim Four in the appeal or the PLA of his post-conviction petition. (Reply at 6–8.) Again, as with Claim Two, Webb failed to raise Claim Four in his post-conviction appeal or the PLA of his post-conviction petition. (Resp. Ex. H, at 2 ("Defendant's post-conviction appeal alleged: (1) numerous instances of ineffective assistance of counsel; (2) illegal search and seizure; and (3) that he was not proven guilty beyond a reasonable doubt.")); (Resp. Ex. I, at 2 ("Leave of appeal should be granted because Webb's Constitutional Rights were violated during an illegal search and seizure (4th Amend.), his rights to due process (14th Amend.), & right to effective assistance of counsel (6th Amend.)").) Because Petitioner has not raised Claim Four through one complete round of state court review, Claim Four is procedurally defaulted.

---

[8] Webb summarized Claim Four as follows: "Whether the Circuit Court erred in denying Petitioner's motion for directed verdict of acquittal where the motion was timely filed and the people had failed to prove Defendant guilty beyond a reasonable doubt viewing the evidence in the light most favorable to the People." (Pet. at 6.)

8

## A. Fourth Amendment Claims in Habeas Petitions—Claim Three

Webb argues in Claim Three that the trial court erroneously denied his motion to quash arrest and suppress evidence.[9] (Pet. at 21.) As Webb has exhausted all state court remedies related to this claim and has presented his federal claim through each level of state court, he has not procedurally defaulted on Claim Three. Nonetheless, we hold that Claim Three is non-cognizable, and we cannot review the merits of it here.

### 1. Standard of Review

If the petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court, the claim is precluded from federal habeas review. *Miranda v. Leibach,* 394 F.3d 984, 997 (7th Cir. 2005). "A petitioner has had the benefit of such an opportunity so long as: (1) he clearly appraised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." *Miranda,* 394 F.3d at 997 (citing *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)). In assessing whether a state court applied the proper constitutional case law, we must only determine if it "look[ed] to the appropriate body of decisional law," not to how it applied the law. *Hampton v. Wyant,* 296 F.3d 560, 563 (7th Cir. 2002). Additionally, the Seventh Circuit has held that "'full and fair opportunity' guarantees only 'the right to present one's case,'" and not an examination of "whether the state courts 'got the decision right.'" *Watson v. Hulick,* 481 F.3d 537, 542 (7th Cir. 2007) (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003)).

### 2. Claim Three Analysis

The facts in the present case establish that Webb received a full and fair opportunity to litigate his claim. Webb asserts in his habeas petition that the warrantless search of the vehicle he was driving violated his Fourth Amendment rights. (Pet. at 21.) Webb first asserted his Fourth Amendment claim in

---

[9] Webb summarized Claim Three as follows: "Illinois courts unreasonably applied clearly established federal law and made an [sic] unreasonable findings of fact in denying petitioner's motion to quash and suppress evidence where the basis for probable cause was the odor of burnt cannabis emanating from Petitioner's vehicle." (Pet. at 21.)

a Motion to Suppress prior to trial. The trial court heard and denied Webb's Motion to Suppress. (Resp. Ex. L, Vol. 1, R. at 58.) The trial court found that the warrantless search was valid on probable cause grounds due to the odor of marijuana and alternatively as pursuant to an inventory search. (Resp. Ex. L, Vol. 1, R. at 57–58 ("[T]here is no question in the Court's mind … that the actual smell of burning cannabis gave the officer the right to not only search the vehicle inside, but … allowed him to also search the trunk … But even assuming the strong odor was enough, I am ruling that the inventory was appropriate.")) Webb raised the same argument in the appeal of his conviction. (Resp. Ex. B, at 20–22); (Resp. Ex. D, Pet. Direct Appeal Reply Br. *People v. Webb*, No. 3-08-0880, at 11–15.) The Illinois Appellate Court considered the issue and held that "the trial court's decision to deny defendant's motion to quash arrest and suppress evidence was supported by testimony and authority" under both the probable cause and the inventory search justifications. (Resp. Ex. A, at 14.)

Webb also litigated the issue at all three levels of state court in his post-conviction proceedings. (Resp. Ex. E, at 9–13); (Resp. Ex. G, at 12–14); (Resp. Ex. I, at 2.) The trial court held a hearing on Webb's post-conviction petition. Webb argued that his counsel was ineffective in arguing in support of his pre-trial motion to quash the arrest and suppress evidence, but did not present Claim Three as set forth here. Nonetheless, Webb had the opportunity to raise the claim again, and the trial court had already considered the claim at the pre-trial motion. Webb raised Claim Three at the appellate level and in his post-conviction PLA to the Illinois Supreme Court. (Resp. Ex. G, at 12–14); (Resp. Ex. I, at 2.) The appellate court dismissed Webb's Fourth Amendment claim without reviewing the merits because it had had already considered and denied it on direct appeal. (Resp. Ex. H, at 2.) The Illinois Supreme Court denied Webb's PLA. (Resp. Ex. J.)

Respondent argues that through the proceedings described above, Webb had a full and fair opportunity to litigate this issue. (Ans. at 14–16.) We agree. Webb makes no argument that he was deprived of a full and fair opportunity to litigate this claim. Webb alleges that "the trial court applied an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the

United States in Arizona v. Gant."[10] (Pet. at 26.) The appellate court in affirming the trial court's decision, however, expressly considered the *Gant* case and rejected Webb's reliance on it.[11] (Resp. Ex. A, at 12.)

Webb had multiple opportunities to present his Fourth Amendment claim. At both the trial and the appellate level, the state courts carefully and thoroughly analyzed the facts and applied the correct law before reaching a decision on his claim. Claim Three is accordingly non-cognizable, and we cannot consider it here.

### A. Unreasonable Application of Federal Law – Claim One

Webb argues in Claim One that there was insufficient evidence for the trial court to find that Webb knowingly possessed a controlled substance.[12] (Pet. at 14.) Webb concedes that the Illinois Appellate Court identified the correct law governing possession with intent to deliver, but argues that his rights as delineated in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979)[13] were violated. (Reply at 2.) Respondent has not argued that this claim is procedurally defaulted, only that it is improper because the "state appellate court's decision on direct appeal rejecting the claim was not contrary to, or an unreasonable application of, clearly established federal law." (Ans. at 7.) Because we find that a reasonable factfinder could have found that each element of possession of a controlled substance with the intent to distribute was proven beyond a reasonable doubt, we deny the petition as to Claim one.

---

[10] The full citation is: *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009).
[11] We further find that *Gant* reaffirms a ruling laid out in *United States v. Ross,* 456 U.S. 798, 820–21, 102 S. Ct. 2157, 2170–71 (1982), which "authorizes a search of any area of the vehicle in which the evidence [of criminal activity] might be found[,]" provided that there is "probable cause to believe a vehicle contains evidence of criminal activity." *Gant*, 556 U.S. at 347, 129 S. Ct. at 1721. And as the Illinois Appellate Court correctly points out, "[i]t is well established in Illinois that a trained and experienced police officer's detection of the odor of burnt cannabis is sufficient to establish probable cause." (Resp. Ex. A, at 13.)
[12] Webb summarizes Claim One as follows: "Illinois courts unreasonably applied clearly established federal law when it [sic] ruled that Petitioner was proven guilty beyond a reasonable doubt of the offense of possession of a controlled substance with intent to deliver." (Pet. at 14.)
[13] The Court in *Jackson* held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.*, at 324, 99 S. Ct. at 2791–92.

### 1. Standard of Review

28 U.S.C. § 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The question before us "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940 (2007) (citing *Williams v. Taylor,* 529 U.S. 362, 410, 120 S. Ct. 1495, 1522 (2000)). We must also "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 474, 127 S. Ct. at 1940 (quoting 28 U.S.C. § 2254(e)(1)). "A state court unreasonably applies clearly established federal law if it identifies the appropriate standard, but unreasonably applies it to the facts." *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (citing *Taylor,* 529 U.S. at 413)*; Burr v. Pollard,* 546 F.3d 828, 831 (7th Cir. 2008). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Thurmer*, 561 F.3d at 743 (quoting *Schaff v. Snyder,* 190 F.3d 513, 523 (7th Cir. 1999)); *Simpson v. Battaglia,* 458 F.3d 585, 592 (7th Cir. 2006).

### 2. *Claim One Analysis*

Webb argues in Claim One that his conviction constitutes an unreasonable application of clearly established federal law because the State failed to prove the elements required beyond a reasonable doubt. (Pet. at 14.) To be guilty of possession of a controlled substance with the intent to deliver, the State must prove three elements: (1) defendant had knowledge of the controlled substance; (2) the controlled substance was in the defendant's immediate possession or control; and (3) the defendant intended to deliver the controlled substance*. People v. Robinson*, 167 Ill. 2d 397, 407, 657 N.E.2d 1020 (Ill. 1995); 720 I.L.C.S. 570/401. The Illinois Appellate Court in affirming Webb's conviction correctly stated that knowledge must often be inferred from circumstances. (Resp. Ex. A, at 5–6.) Furthermore "[p]roof that a

defendant had control over the premises where the drugs were located can help resolve this issue because it gives rise to an inference of knowledge and possession of the drugs, but control of the premises is not a prerequisite to a conviction." *People v. Givens*, 237 Ill. 2d 311, 335, 934 N.E.2d 470, 484 (Ill. 2010).

The crux of Webb's argument is that the State failed to prove the second and third elements - knowledge and possession. (Pet. at 15.) Webb argues that the State never proved beyond a reasonable doubt that Webb knew of the cocaine in the trunk of the car and that the State failed to prove beyond a reasonable doubt that Webb exercised any control over the cocaine. (*Id.* at 16.) In support, Webb cites *United States v. DiNovo*, 523 F.2d 197, 201 (7th Cir. 1975) for the proposition that "mere proximity to the drug… is insufficient to support a finding of possession." *Id.* (quoting *Arellanes v. United States*, 302 F.2d 603, 606 (9th Cir. 1962); (Pet. at 16.) Webb essentially argues, citing to *DiNovo* that the State established nothing more than "mere proximity" to the drugs. (Pet. at 16.) In *DiNovo*, drugs were found in a trailer home where a husband and wife lived. *DiNovo*, 523 F.2d at 201. The Seventh Circuit reversed the conviction of the wife for possession of a controlled substance stating that because there was "no evidence" showing that the wife owned the trailer, constructive possession could not "be justified on the basis of her possessory interest in the trailer." *Id.* *DiNovo* can be distinguished from the facts in the immediate case because, unlike *DiNovo*, the State here has presented evidence that Webb owned the vehicle where the drugs were found.

Webb also argues that because the passenger had access to the trunk, the State failed to prove beyond a reasonable doubt that Webb had constructive possession of the cocaine found in the trunk. (Pet. at 14–17.) But Illinois courts have held that "[m]ere access by other persons to the area where drugs are found is insufficient to defeat a charge of constructive possession; if two or more people share immediate and exclusive control or share the intention and power to exercise control, then each has possession." *People v. Eiland*, 217 Ill. App. 3d 250, 261, 576 N.E.2d 1185, 1193 (5th Dist. 1991) (citing *People v. Scott*, 152 Ill. App. 3d 868, 871, 505 N.E.2d 42, 45 (5th Dist. 1987)). Furthermore, constructive possession can be inferred when a person has control over an area. *See People v. Thomas*, 407 Ill. App. 3d 136, 140–41, 943 N.E.2d 179, 183 (1st Dist. 2011) (citing *People v. Rangel,* 163 Ill. App. 3d 730,

13

739–40, 516 N.E.2d 936 (1st Dist. 1987)) ("The trier of fact can infer constructive possession of an object from control of an area (like a car) and knowledge of the presence of the object… in the area. However, the defendant can rebut the inference.") Because the cocaine was found within the trunk of the car Webb was driving, the trial court could properly infer that Webb had constructive possession and knowledge of the cocaine.

Webb attempts to rebut this inference by making two arguments. The first is that the passenger in the vehicle when it was pulled over "may be the one in possession of the contraband." (Pet. at 16–17.) The record, however, is devoid of any evidence connecting the passenger to the cocaine found in the trunk. Therefore, pursuant to *Eiland*, Webb has not rebutted the inference of constructive possession by only pointing to the presence of the passenger and the passenger's access to where the drugs were found.

The second argument Webb advances is that Byron Parker, the man who held the title to the car, was the true owner of the car. Webb asserts that Parker's testimony that he sold the car to Webb was a "self-serving attempt to protect himself from being charged with constructively possessing the cocaine found in the trunk." (Pet. at 15.) Parker's and Webb's testimony cannot both be true so it is left to the trier of fact to determine the credibility of each story. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789 (It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.") We can only disturb the factfinder's determination if we find that no rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Id.*; *United States v. Mire*, 725 F.3d 665, 678 (7th Cir. 2013). Here, however, we find that a rational factfinder could have found the elements of possession of a controlled substance with the intent to distribute beyond a reasonable doubt.

The Illinois Appellate Court pointed to "numerous facts which tie defendant to the drugs in the car." (Resp. Ex. A, at 7.) The record shows, for example, that Webb was carrying $3,080 in his pocket when he was arrested. (*Id.* at 7–8.) Byron Parker testified that he cleaned out the car completely before selling it to Webb and that the cocaine in the trunk was not his. (*Id.*) Illinois courts have held that it is within the reasonable judgment of a trier of fact to determine that a large amount of cash found on a

person is drug related. *See People v. Berry*, 198 Ill. App. 3d 24, 30, 555 N.E.2d 434, 438 (2nd Dist. 1990) (holding that the jury "reasonably could have found the money was drug-delivery related due to the improbability that [alleged loaner]'s loan of $2,000 would have been divided into two separate, sealed envelopes of $1,000 each and that the defendant never endeavored to identify the "friend" who loaned him the other $1,000.") Here, Webb testified that he had $3,080 in cash on his person because he was planning on purchasing a car. (Resp. Ex. L, Vol. 1, R. at 178.) The trial court did not find Webb's story credible. (*Id.* at 253.) The trier of fact determines the credibility of the witnesses in front of it and "absent extraordinary circumstances" that determination should not be disturbed. *United States v. Van Wyhe*, 965 F.2d 528, 531 (7th Cir. 1992) (citing *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir. 1989)). Webb has not presented extraordinary circumstances here. Because we find that a reasonable factfinder could have found that each element of possession of a controlled substance with the intent to distribute was proven beyond a reasonable doubt, we deny the petition as to Claim One.[14]

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1), a COA is required for an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. §§ 2254 or 2255. *See* 28 U.S.C. § 2253©. We may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Walker v. O'Brien,* 216 F.3d 626, 631–32 (7th Cir. 2000). To make a substantial showing of the denial of a constitutional right where the district court has rejected a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong," or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, n.4, 103 S. Ct. 3383, 3394–95 (1983)). Where, as for Counts Two and Four, the district court has rejected "a petitioner's claims on procedural grounds without reaching the prisoner's underlying constitutional

---

[14] For these same reasons, even if Claim Four were not defaulted, we would deny the petition as to Claim Four.

claim," it should issue a COA only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484, 120 S. Ct at 1604; *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). We decline to issue a COA on any of the four claims before us.

While we acknowledge that the factual evidence proving the elements of possession with the intent to distribute was not overwhelming, the trial court determined that Webb was not credible and found him guilty. Absent extraordinary circumstances, we cannot override the factfinder's credibility determinations. We find no extraordinary circumstances here. We hold that a jurist of reason would not debate the lack of extraordinary circumstances. We therefore decline to issue a COA on Claim One.

We ruled that Claim Two and Four were procedurally defaulted because Webb failed to raise each claim to the Illinois Supreme Court in either his direct appeal or his post-conviction proceedings. No reasonable jurist would debate whether the Supreme Court of Illinois had an opportunity to rule on Claim Two or Four, and we therefore decline to issue a COA on either claim. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

We ruled that Claim Three was non-cognizable because Webb had a full and fair opportunity to litigate Claim Three at each level of state court. Webb does not challenge that he received a full and fair opportunity to litigate Claim Three, and reasonable jurists could not debate our finding. *See, e.g., U.S. ex rel. Johnson v. Hulick*, No. 08 C 3474, 2009 WL 383620, at *2 (N.D. Ill. Feb. 17, 2009) (finding that because the petitioner had "not addressed this court's conclusion that his evidentiary and sentencing claims are defaulted or are otherwise non-cognizable and he has not made a substantial showing that his constitutional rights were violated with respect to such claims.) We therefore decline to issue a COA on Claim Three.

**CONCLUSION**

Because Webb has not presented a federal claim that would entitle him to habeas relief, his petition is denied in its entirety. We also decline to issue a COA. It is so ordered.

_____
MARVIN E. ASPEN
United States District Court Judge

Date: March 7, 2014